M. S. ENGLEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. J. ENGLEMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5981, 6193. Promulgated November 7, 1927.

1. The fair market value of stock on March 1, 1913, determined.
2. Value of assets transferred by corporation on dissolution to a partnership determined.

*W. H. Cloud, Esq.*, and *O. R. Able, C. P. A.*, for the petitioners.
*John D. Foley, Esq.*, for the respondent.

These proceedings, which were consolidated for the purpose of trial and decision, are for the redetermination of deficiencies in income taxes for the year 1920. The deficiency in the case of M. S. Engleman, Docket No. 5981, is $494.43, and arises from the respondent having refused to consider good will in determining the book value of certain shares of stock on March 1, 1913, which value was used as a basis for computing profit from the liquidation in 1920 of the corporation in which the stock was owned. The deficiency in the case of F. J. Engleman, Docket No. 6193, is $2,089.90, and also results from the same action of the respondent.

FINDINGS OF FACT.

The Central Boarding & Supply Co. was incorporated under the laws of Illinois on February 14, 1907. The company was organized with a capital stock of $15,000, divided into 300 shares of a par value of $50 each. Among those who acquired stock in the corporation at the time of organization were the petitioners herein and E. D. Crawley. F. J. Engleman was vice president and E. D. Crawley was secretary and treasurer.

The corporation operated a railroad commissary contracting business under a contract previously negotiated by F. J. Engleman with the St. Louis & San Francisco Railroad Co. After the Central Boarding & Supply Co. was incorporated a written contract embodying the agreement resulting from the negotiations of Engleman was signed on behalf of the railroad company by a vice president and on behalf of the Central Boarding & Supply Co. by F. J. Engleman as vice president, and E. D. Crawley as secretary. Under the contract the Central Boarding & Supply Co. was to supply board, bedding and other equipment necessary to provide in cars furnished by the railroad company temporary living quarters to such employees of the railroad company as were engaged in construction work on its lines away from cities and towns. The supply company was also to maintain a commissary at each place where cars were

kept and was to sell from the commissary to the employees at reasonable prices clothing, shoes, and other necessary and suitable supplies. The contract contains no limitation as to how long it should continue, except that it could be terminated by either party upon 30 days' written notice.

The contract with the railroad company was capitalized by the Central Boarding & Supply Co. at $5,000, at which amount it remained on the company's books until dissolution on March 31, 1920.

Prior to the organization of the Central Boarding & Supply Co., F. J. Engleman and E. D. Crawley had had several years' experience in the work to be performed under the contract with the railroad company. In the work to be carried on under the contract, these two persons served as the principal officers and were the principal ones engaged in carrying on the corporation's business until E. D. Crawley retired from the company in 1919, when the principal burden of the business was assumed by F. J. Engleman. All dealings between the Central Boarding & Supply Co. and the railroad company were carried on by him, and it was due to his ability, previous experience, and his connection with the boarding and supply company that the railroad entered into the contract which continued in effect throughout the existence of the boarding and supply company.

A boarding contract was acquired from the C. H. & D. R. R. prior to 1913 and another was obtained from the C. & E. I. R. R. during the winter of 1912 and 1913. No other contracts of importance were acquired prior to the dissolution of the boarding and supply company and the contracts between the C. H. & D. and C. & E. I. railroads were not being operated at that time.

The earnings of the Central Boarding & Supply Co. for the five-year periods ended February 28, 1913, and March 1, 1920, were as follows:

Year ended Feb. 28:

| | |
|---|---:|
| 1909 | $5,503.22 |
| 1910 | 12,246.16 |
| 1911 | 15,500.00 |
| 1912 | 21,388.30 |
| 1913 | 11,524.81 |
| Total | 66,162.49 |
| Average earnings | 13,232.50 |

Year ended:

| | |
|---|---:|
| Feb. 28, 1916 | $80,813.15 |
| Feb. 28, 1917 | 32,127.72 |
| Feb. 28, 1918 | 25,683.62 |
| Feb. 28, 1919 | 12,419.18 |
| Dec. 31, 1919 | 11,120.72 |
| Mar. 31, 1920 | 3,327.39 |

Surplus, capital stock and assets for the five-year period ended February 28, 1913, were as follows:

| Feb. 28— | Surplus | Capital stock | Intangible assets | Tangible assets |
|---|---|---|---|---|
| 1909 | $2,253.08 | $15,000 | $5,000 | ·$12,253.84 |
| 1910 | 7,000.00 | 15,000 | 5,000 | 17,000.00 |
| 1911 | 6,000.00 | 15,000 | 5,000 | 16,000.00 |
| 1912 | 10,138.30 | 15,000 | 5,000 | 20,138.30 |
| 1913 | 9,663.11 | 15,000 | 5,000 | 19,663.11 |
| Total | | | | 85,055.25 |
| Average tangible assets | | | | 17,011.05 |

Balance sheets of the company from February 28, 1916, to March 31, 1920, were as follows:

| | Feb. 28, 1916 | Feb. 28, 1917 | Feb. 28, 918 | Feb. 28, 1919 | Dec. 31, 1919 | Mar. 31, 1920 |
|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | |
| Cash | $25,263.79 | $19,852.58 | $13,271.83 | $17,932.08 | $3,314.39 | $1,945.24 |
| Accounts receivable | 44,229.64 | 41,507.32 | 36,645.56 | 52,702.15 | 29,301.04 | 47,799.39 |
| Loans and advances | | 14,901.77 | 15,400.00 | 17,679.82 | 17,880.16 | |
| Liberty bonds | | | 2,000.00 | 6,007.50 | | |
| Inventory | 8,637.23 | 13,704.56 | 17,739.36 | 6,593.00 | 9,677.00 | 9,398.64 |
| Prepaid insurance | | 899.94 | | | | |
| Equipment | 43,189.76 | 43,034.36 | 37,366.36 | 14,969.74 | 11,715.09 | 9,647.23 |
| Real estate | | | | | 29,392.08 | 25,000.00 |
| Contract | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 |
| Total | 126,320.42 | 138,900.53 | 127,423.11 | 120,884.29 | 106,279.76 | 98,790.50 |
| **LIABILITIES AND CAPITAL** | | | | | | |
| Pay roll payable | | 5,230.11 | 4,418.32 | 3,033.49 | | |
| Accounts payable | 17,085.98 | 37,308.26 | 19,244.22 | 16,349.73 | 14,477.56 | 4,062.39 |
| Notes payable | | | 9,018.63 | | | |
| Capital stock | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| Surplus | 94,234.44 | 81,362.16 | 79,741.94 | 86,501.07 | 76,802.20 | 79,728.11 |
| Total | 126,320.42 | 138,900.53 | 127,423.11 | 120,884.29 | ·106,279.76 | 98,790.50 |

The Central Boarding & Supply Co. as a corporation was dissolved March 31, 1920, and its assets, which were carried on its books at a total value of $98,790.50, were transferred to and its liabilities of $4,062.39 as shown by the books were assumed by a partnership of the same name as of April 1, 1920. The partnership began business with a capital of $94,728.11, which amount represented the difference between the amount of the assets and the liabilities of the corporation as shown by its books. The partnership was composed of the same persons who were stockholders in the corporation. Its capital of $94,728.11 was apportioned to the partners on the basis of the stock holdings in the corporation. It continued the business conducted by the corporation and, without advising the St. Louis & San Francisco Railroad Co. of the change in form of organization, operated under the contract entered into between the corporation and the railroad company.

11340°—28——84

On March 31, 1920, the date of dissolution of the Central Boarding & Supply Co. as a corporation, F. J. Engleman owned 146⅔ shares of the stock of the corporation, of which 66⅔ shares had been acquired prior to March 1, 1913, while the remaining 80 shares had been purchased in July, 1919, from E. D. Crawley at a cost of $453.33 per share. On the basis of his holdings in the corporation, F. J. Engleman was credited with a 44/90 interest in $94,728.11 representing the capital of the partnership, or $46,311.32. M. S. Engleman owned 16⅔ shares of stock at the date of dissolution, all of which had been acquired prior to March 1, 1913, and on the basis of his holdings he was credited with a 5/90 interest in the capital of the partnership, or $5,262.67. The stock of the corporation was never listed on any stock exchange and was never traded in with the exception of the few infrequent transfers between the original incorporators and stockholders.

At the date of dissolution the real estate owned by the corporation consisted of a hotel building and lot at Eastland, Tex. This property was carried on the books at $25,000, but in fact had a fair market value of only $15,000. An item of equipment representing stoves, dishes, kitchen utensils, and bedding was carried on the books of the corporation at $9,647.23. The fair market value of this equipment at the time of dissolution was $5,000. When the corporation was dissolved it owed Federal taxes of $1,317 which had not been entered on the books, but which were subsequently paid by the partnership.

In computing the taxable profit resulting to the petitioners from the dissolution and liquidation of the corporation and the acquisition of the business by the partnership the respondent used the book value on March 1, 1913, of the stock acquired by them prior to that date or $82.21 per share. He also considered the amount of the partnership capital apportioned to each petitioner on the basis of his stock holdings in the corporation as the amount received in payment for the stock.

OPINION.

TRAMMELL: The petitioners contend (1) that the fair market value on March 1, 1913, of the capital stock of the Central Boarding & Supply Co. was $275 per share; (2) that the value of the entire net assets of the corporation transferred to the partnership on dissolution was $78,763.88; (3) that M. S. Engleman's share in such assets was of a value of $4,375.77; and (4) that F. J. Engleman's share had a value of $38,506.78.

In support of the contention that the stock had a fair market value of $275 on March 1, 1913, the petitioners introduced evidence as to the amount of earnings of the corporation for the preceding

five years and the amount of capital stock and assets both tangible and intangible during that period to show that the corporation had good will to the amount of $57,657 on March 1, 1913, which was not taken into consideration by the respondent in his determination of the value of the stock on that date. In addition, F. J. Engleman testified as to an unaccepted offer made by a third person in his presence to E. D. Crawley during 1912 to purchase for $250 per share the 150 shares of stock held by her in the corporation. He also testified that in view of the previous earnings of the corporation, the contracts it held on March 1, 1913, and the prospects for future earnings, the stock in his opinion had a value of $275 per share on that date.

It may well be, as contended by the respondent, that under the particular facts and circumstances, apart from F. J. Engleman the corporation did not have any good will; that personal qualifications, experience, ability and skill of an individual do not constitute good will as an item of property. *Providence Mill Supply Co.*, 2 B. T. A. 791; *Northwestern Steel & Iron Co.*, 6 B. T. A. 119. But here we are not so much concerned with the question of good will as an item of property. The question here is the value of the stock. All the evidence that has any bearing on that question should be considered. In the absence of sales the value of the assets may be resorted to. It makes no difference by what name an asset is called. Clearly the corporation had an asset in the form of the contract. It was capitalized at $5,000. It clearly had a value in excess of that amount. Considering the earnings and the value of the tangible assets, the corporation had some intangible assets in excess of $50,000. We have a record of earnings for several years prior to basic date and the testimony as to the prospects for the future. We also have an offer to purchase the stock at $250 a share which offer was declined. Considering all the evidence, we think that the stock had a value of $250 a share on March 1, 1913.

In March, 1920, a partnership was formed by the stockholders of the corporation with the same name as the corporation. This partnership continued the same business without any change, except the form of the organization, with the same assets without any interruption. Before the assets could be paid into the partnership, however, they became the property of the stockholders who formed the partnership. The organization of the partnership and the transfer of the assets to it was contemporaneous with the dissolution of the corporation. It was the purpose to carry on the same business in partnership form instead of corporate form without interruption.

In view of all the facts and circumstances, the assets, both tangible and intangible, belonging to the corporation were transferred to the partnership. The contract with the railroad owned by the corpora-

tion did not lose its value merely because of the fact that in transferring it to the partnership it was included among assets which temporarily became the property of the persons who were stockholders, although they did not actually receive the assets themselves. The contract when the corporation was dissolved was of value. The question is, then, what was its value in March, 1920, when the corporation was dissolved and its assets distributed. Considering the earnings over the years from 1916 to March, 1920, it appears that 1916 was a year of abnormally high earnings. They constantly decreased from that time until 1920. Considering the earnings and the value of the tangible assets in connection with all the other facts, a value of at least $42,000 is arrived at. This value added to the net value of assets owned by the corporation as shown by the books on March 1, 1920, gives approximately $127,000 as the value of all assets, using the values of other assets as shown by the books. This value is substantially corroborated by the sales price of $453.33 a share paid by F. J. Engleman for 80 shares of the stock in July, 1919. At that value per share the assets would have had a value in July, 1919, of approximately $135,000. But other factors than asset values may have entered into the stock transaction. The company had the prosperous years of 1916, 1917, and 1918. The year 1919 had not ended and the smaller earnings of the full year 1919 and the year 1920 had not been realized. In view of all the evidence we think that the value of all the assets should be determined by including the contract at a value of $42,000 in March, 1920.

Since we have found that the value of the net assets transferred by the corporation to the partnership was not correctly reflected on the books of the corporation, a reduction of $10,000 should be made in the amount of real estate and a reduction of $4,647.23 should be made in the amount of the equipment.

As an item of $1,317 representing unpaid Federal taxes was not taken into consideration at the time of the transfer, the amount of the net assets should be further reduced by this amount. The gain taxable to each of the petitioners is the difference between the March 1, 1913, value of the stock, which was greater than cost, and the value of the assets to which each was entitled by virtue of his stock ownership.

*Judgment will be entered on 10 days' notice, under Rule 50.*

Considered by MORRIS, MURDOCK, and SIEFKIN.